**EXHIBIT**

**1**

exhibitsticker.com

Filed
File Date: 10/12/2023 7:11 PM
Merrimack Superior Court
E-Filed Document

## THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH

MERRIMACK SUPERIOR COURT                    Case Number: 217-2023-CV-00549

**Rudolph Giuliani**, plaintiff

v.

**Joseph Robinette Biden, Jr.**, individually and as
a private citizen,
**Biden for President**, a presidential principal
campaign committee,
**Biden Victory Fund**, a nonqualified joint
fundraising committee and joint
fundraising representative,
**Biden Action Fund,** a nonqualified joint
fundraising committee and joint
fundraising representative,
**Biden Fight Fund**, a nonqualified joint
fundraising committee and joint
fundraising representative, and
**Biden Baldwin Victory Fund**, a nonqualified joint
fundraising committee and joint
fundraising representative,

## AMENDED COMPLAINT – *JURY TRIAL REQUESTED*

The Plaintiff, Rudolph Giuliani, brings this action to recover damages for defamatory and

false light statements made about the Plaintiff by the Defendant, Joseph Robinette Biden, Jr., a

private citizen, and on behalf of, or with the joint and severally encouragement, support, and

sponsorship of the remaining defendants.

### PARTIES

1.    The Plaintiff, Rudolph Giuliani, is an individual and a resident of the State of New York,

with a residential address of 45 East 66th Street, New York, New York 10065. The Plaintiff

is also known as Rudy Giuliani.

2.    The Defendant, Joseph Robinette Biden, Jr., is an individual who is currently the President of the United States and resides at any or all various residential addresses, including The White House, 1600 Pennsylvania Avenue NW, Washington, D.C. 20500, 1209 Barley Mill Road, Greenville, Delaware 19807, and 32 Far View Road, Rehoboth Beach, Delaware 19971.

3.    The Defendant, Biden for President, is a Presidential Principal Campaign Committee existing continually since at least the calendar year 2016 and existing today, or existing as a successor in interest to a committee by the same name, and each of which (i) filed reports with the Federal Election Commission under FEC entity ID #: C00703975, (ii) have the same mailing address of P.O. Box 58178, Philadelphia, Pennsylvania 19102, and (iii) that currently has Maju Varghese as its treasurer and Taryn Vogel, P.O. Box 58174, Philadelphia, Pennsylvania 19102 as its agent.

4.    In the 2020 presidential election cycle, the Defendant, Biden for President, had total receipts of more than $1.074 billion.

5.    As of June 40, 2023, the Defendant, Biden for President, held net cash assets of $11.1 million.

6.    Upon information and belief, the principal place of business of the Defendant, Biden for President, is in Wilmington, Delaware, but at a street address hidden from the public.

7.    The Defendant, Biden Victory Fund, is and has been a nonqualified joint fundraising committee with its mailing address and principal place of address at 430 South Capitol Street SE, Washington, DC 20003.

8.    In the 2020 election cycle, the Defendant, Biden Victory Fund, filed with the Federal Election Commission under the ID #: C008 and received contributions totaling more than $614 million.

9.    At the end of the calendar year 2020 the Defendant, Biden Victory Fund, held net cash assets in an amount more than $45 million.

10.    The Defendant, Biden Victory Fund, currently operates under the same FEC ID number as in 2020 and, as of June 40, 2023, held net cash assets of more than $19.5 million.

11.    The Defendant, Biden Action Fund, is and has been a nonqualified joint fundraising committee with its mailing address and principal place of address at 430 South Capitol Street SE, Washington, DC 20003.

12.    In the 2020 election cycle, the Defendant, Biden Action Fund, filed with the Federal Election Commission under the ID #: C00746651 and received contributions totaling more than $53 million.

13.    In the current 2024 election cycle, the Defendant, Biden Action Fund, filed on June 30, 2023, with the Federal Election Commission under the ID #: C00838912 and to the date of the filing of this complaint has received contributions totaling almost $10 million and holds net cash assets more than $9.5 million.

14.    The Defendant, Biden Fight Fund, is and has been a nonqualified joint fundraising committee with its mailing address and principal place of address at 430 South Capitol Street SE, Washington, DC 20003.

15.    In the 2020 election cycle, the Defendant, Biden Fight Fund, filed with the Federal Election Commission under the ID #: C00762229 and received contributions totaling more than $19 million.

16. The Defendant, Biden Baldwin Victory Fund, is an organization with its mailing address at P.O. Box 58174, Philadelphia, Pennsylvania 19102.

17. In the 2024 election cycle, the Defendant, Biden Baldwin Victory Fund, filed on August 29, 2023, with the Federal Election Commission under the ID #: C00849281.

18. To the date of filing this complaint, the Defendant, Biden Baldwin Victory Fund, has not filed a report listing its contributions, expenditures, and net cash assets.

19. The Defendant, Biden for President, exists as the controlling organization for a group of entities comprised of the other organizational defendants, all of which are Joint Fundraising Representatives that join and have joined together to promote the election of the Defendant, Biden to the Presidency.

20. Upon information and belief, in the 2020 presidential cycle, all the organizational defendants identified above jointly and separately encouraged, relied on, and/or promoted statements, including false statements and defamatory statements, by the Defendant, Biden, to achieve their jointly promoted and shared goal of attracting contributions and raising funds for their operation and to spend in the election of the Defendant, Biden, including those funds reference in the preceding paragraphs of this Complaint.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this matter pursuant to RSA 491:7 and as confirmed in Keeton v. Hustler Magazine, 465 U.S. 770 (1984).

22. Venue is proper in this Court under RSA 507:9, in that "no one of the parties is an inhabitant of the state..." NH Stat. 507:9 Transitory (New Hampshire Statutes (2023 Edition)).

<u>PERSONAL JURISDICTION OVER DEFENDANT BIDEN</u>

23.     This Court has personal jurisdiction over Defendant Biden under RSA 510:4(I) because Defendant Biden committed tortious acts within this State, as described more particularly below,

   a.  by making defamatory and false light statements about the Plaintiff in at least one media outlet in New Hampshire, and based upon experience and belief, to multiple media outlets, or

   b.  by making defamatory and false light statements about the Plaintiff in such a manner and under such circumstances as he knew or should have known that those statements would be and were distributed and otherwise published in this State, or

   c.  both.

24.     This Court has personal jurisdiction over the Defendants, Biden for President, Biden Victory Fund, Biden Action Fund, Biden Fight Fund, and Biden Baldwin Victory Fund, pursuant to RSA 510:4(I) because they jointly and separately encouraged, relied on, and/or promoted statements, including the false statements and defamatory statements or statements made by the Defendant, Biden about the Plaintiff.

<u>APPLICATION OF THE NEW HAMPSHIRE STATUTE OF LIMITATIONS AND THE</u>

<u>SINGLE PUBLICATION RULE</u>

<u>(Keeton v. Hustler Magazine, Inc., 131 NH.H. 6, 549 A.2D 1187)</u>

25.     The Single Publication Rule as formulated by the Restatement (Second) of Torts §577A applies to allow the recovery of damages as to Defendant Biden's false and defamatory statements(s) that are the subject of this Complaint wherever and in whatever jurisdiction such statement or statements were distributed or published.

26.    The Plaintiff may recover for the distribution of each defamatory statement in all jurisdictions, and not just New Hampshire, including without limitation those jurisdictions whose own statutes of limitations would bar recovery.

## FACTS

27.    In 2020 Donald Trump and the Defendant, Biden were the nominated candidates of their political parties and agreed to participate in nationally broadcast debates, including a debate on October 22, 2020.

28.    The above-referenced October 22, 2020, debate had 63 million national television and other video viewers.[1]

29.    At this October 22, 2020, national debate and in conformity with Defendant Biden's established pattern and practice of stating fantastic falsehoods throughout his public career, such as adopting in a speech the early years and family history of British Labor Party leader Neil Kinnock as Defendant Biden's own,[2] Defendant Biden having alternately claimed to have been raised in a synagogue, a black church, and the Puerto Rican community,[3] and Defendant Biden having made the false and defamatory statements that the Catholic Church has changed its position on abortion,[4] all of which falsehoods and defamations were

---

[1] *More than 63 million people watch the final presidential debate*, CNN Business, October 23, 2020. https://www.cnn.com/2020/10/23/media/final-presidential-debate-tv-ratings/index.html#:~:text=More%20than%2063%20million%20people%20watched%20Thursday%20night's%20debate%20between,the%20first%20Trump%2DBiden%20debate. (accessed September 24, 2023).

[2] *Joe Biden plagiarized Neil Kinnock speech*, The Telegraph, August 22, 2008. (https://www.telegraph.co.uk/news/worldnews/barackobama/2607505/Joe-Biden-plagiarised-Neil-Kinnock-speech.html (accessed September 24, 2023)).

[3] *Here's The Authoritative List of Lies Joe Biden Has Told As President: 250 and Counting*, The Federalist, September 19, 2023 (https://thefederalist.com/2023/09/19/heres-the-full-list-of-every-lie-joe-biden-has-told-as-president-part-four/ (accessed September 24, 2023)).

[4] See *Remarks by President Biden at a Democratic National Committee Reception*, White House publication,

made to further Defendant Biden's political career, including without limitation, by bringing political contributions such as those received by the organizational remaining defendants, Defendant Biden made false and defamatory statements of fact concerning the Plaintiff. These false and defamatory statements by Defendant Biden likewise were made to further Defendant Biden's political career, including without limitation, by bringing political contributions such as those received by the organizational remaining defendants.

30.    Defendant Biden's false and defamatory statements concerning the Plaintiff started at the October 22, 2020, debate with the statement that President Trump's "*buddy, Rudy Giuliani he (sic) is being used as a Russian pawn he (sic) is being fed information that is Russian that (sic) is not true….*"[5]

31.    Demonstrating that these defamations were not merely one of Defendant Biden's spontaneous insults, devoid of facts and ill-considered, but rather that they were planned, Defendant Biden continued his lies and defamations about the Plaintiff and Russia that evening.

32.    Approximately 48 minutes after the first defamatory statement, Defendant Biden returned to defaming the Plaintiff.    He stated with regard to his now famously disproven manufactured claim that the abandoned laptop of Defendant Biden's son contained Russian disinformation, "**… hey look, there are 50 former national intelligence folks who said that what this (sic) he is accusing me of is a Russian plant. They have said that this is**

---

September 22, 2022 (https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/09/22/remarks-by-president-biden-at-a-democratic-national-committee-reception-2/ ("My generic point — and I happen to be a practicing Roman Catholic — my church doesn't even make that argument now.") (accessed September 24, 2023)).

[5] Videos of Defendant Biden uttering the defamations cited in this complaint can be viewed here: https://www.foxnews.com/politics/biden-debate-giuliani-russian-pawn-hunter-biden-story (accessed September 24, 2023) and here: https://www.youtube.com/watch?v=bPiofmZGb8o&t=5819s (time-stamped at 48:20 and 1:36:22) (accessed October 1, 2023).

has (sic) all the charact . . . (sic) four five (sic) former heads of the CIA both parties

(sic) say what he is saying is a bunch of garbage.  Nobody believes it except the his

(sic) and his good friend, Rudy Giuliani."

33.  Given that millions of Americans, and not just the Plaintiff, then joined with President

Trump in his belief that the laptop of the President's son contained legitimate evidence of

financial misdeeds and personal depravity, and had nothing to do with Russian

disinformation, the Defendant Biden choice to single out the Plaintiff to defame concerning

that belief evidenced a clear intent to harm the reputation of the Plaintiff before a national

audience.

34.  Defendant Biden knew that the preceding statement about the laptop and asserting that the

Plaintiff lied about the content of the laptop were untrue, and Defendant Biden knew it to

be untrue because his then senior campaign advisor Antony Blinken, just the prior week,

played the crucial role in the inception of the false letter concerning the laptop signed by

51 national intelligence officials.  Antony Blinken was the impetus behind its distribution,[6]

thus enabling the Defendant Biden to lie about the laptop and defame the Plaintiff.

35.  Defendant Biden also knew that his words would have their intended effect of

marginalizing, thereby discrediting, the Plaintiff.

36.  The preceding defamations falsely claimed and depicted the Plaintiff, who had previously

known him as America's Mayor, to our nation as a liar.

37.  These defamations were totally without fact or truth.

---

[6] See, e.g., the April 20, 2023 letter of the House Committees on the Judiciary and Permanent Select Committee on
Intelligence to Secretary of State Antony Blinken accessible on the Congressional website here:
https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-04-
20-jdj-mt-to-blinken-re-public-statement-on-hunter-biden-emails_0.pdf (accessed October 1, 2023.

38. The Plaintiff was never used as a Russian pawn.

39. The Plaintiff has never been "fed" untrue information that was Russian, that he knew as false, and that he used while asserting or implying its truth.

40. The Hunter Biden laptop contained no Russian information or misinformation but instead contained the accurate, dissolute, and revealing entries of someone engaged in influence peddling but also in the throes of a drug addiction, thereby recording, and thereby memorializing conduct, actions, and family financial misdeeds that at the very least would have cost Defendant Biden the 2020 presidential election if he had not lied about them and defamed the Plaintiff in the process of doing so.

41. Defendant Biden made these defamations with actual malice or knowledge by Defendant Biden that they were untrue.

42. Defendant Biden made these defamations with a reckless disregard of the truth by Defendant Biden.

43. The Plaintiff has spent years in public and professional service and has built a positive reputation and career.

44. For over fifty years, the Plaintiff has provided public and professional service for and on behalf of the American people that only can be regarded as historic.

45. The Plaintiff began his legal career as a law clerk to United States District Court Judge Lloyd F. MacMahon from 1968 to 1970.

46. The Plaintiff served in the publican positions as an assistant United States attorney, chief of the narcotics division, chief of the public corruption division, and executive assistant United States attorney from 1970 to 1975.

47.    From 1975 to 1977, the Plaintiff served as an associate deputy attorney general in the Department of Justice.

48.    From 1977 to 1981, the Plaintiff was a partner in the New York law firm of Patterson, Belknap, Webb and Tyler.

49.    The Plaintiff served as the Associate Attorney General of the United States (third-ranking position in the U.S. Department of Justice under President Ronald Regan from 1981 to 1983.

50.    The Plaintiff served as the United States Attorney in the Southern District of New York from 1983 to 1989.

51.    The Plaintiff served as the 107th Mayor of New York City from 1994 to 2001.

52.    The Plaintiff served as a law partner in four different law firms, ran a successful worldwide consulting business, served as personal counsel to the United States of America, and was responsible for the successful prosecutions of some of the most important cases in the last 100 years. He wrote a best-selling book entitled Leadership. Currently, the Plaintiff has a daily and a Sunday highly rated radio show on WABC and a daily evening live cast.

53.    The Plaintiff has served as United States Associate Attorney General from 1981 to 1983.

54.    The Plaintiff has served as the United States District prosecutor of the Southern District of New York from 1983 to 1989.

55.    The Plaintiff's reputation was of such sterling and unimpeachable character that he was commonly referred to through the country as "America's Mayor".

56.    The Plaintiff does many charitable events and hosts a well-received podcast in New York City.

10

57. The Plaintiff has spent years in professional and public service and has built a very positive reputation. He has been respected as a lawyer and public servant.

58. Under the circumstances and because of the widespread distribution of the remarks and the context of the statement, despite all the years of public service and honorable conduct of the Plaintiff, he was substantially and irreparably harmed by these defamatory statements of Defendant Biden because, but limited to the following reasons:

   a. When the Plaintiff was identified as a "pawn," it implied that he is easily manipulated, lacks agency, or is merely a tool used by others for larger objectives, thereby publicly undermining the perception of the Plaintiff's autonomy, decision-making capabilities, and significance.

   b. Further, identifying the Plaintiff as a "pawn" implied that he does not act of his own volition, thereby damaging and causing a loss of reputation, especially as the Plaintiff may hold or now be denied positions that require credibility, trust, decision-making, and independence.

   c. This false and defamatory description and comparison of the Plaintiff will lower the Plaintiff's reputation among others. (and)

   d. In the current age of social media and online communications, Defendant Biden's false and defamatory statements and the derogatory terms he used to express his defamations quickly became viral and massively magnified the harm to the Plaintiff's reputation.

11

CLAIMS

COUNT I

(Defamation *Per Se* – All the Defendants)

59.   The allegations in Paragraph one through Paragraph fifty-eight are realleged and incorporated herein.

60.   Defendant Biden knew the above-reference statement was false or acted with reckless indifference to the truth when it published the statement.

61.   The Defendants, Biden for President, Biden Victory Fund, Biden Action Fund, and Biden Fight Fund, jointly and separately encouraged, relied on, promoted and/or realized substantial sums of money from statements of Defendant Biden, including the false statements and defamatory statements or statements made by the Defendant, Biden about the Plaintiff, all with the purpose and/or predictable and realized intent of receiving contributions to the election of Defendant Biden, which purpose was released by each of these organizational defendants.

62.   The defamatory statements of Defendant Biden and chargeable to the remaining defendants constitute defamation *per se* because it accused the Plaintiff of conduct incompatible with the Plaintiff's business, trade, position, or office.

63.   As a result of the defamatory statements, the Plaintiff has suffered damages within the jurisdictional limits of the Court.

12

## COUNT II

### (Defamation *Per Quod* – All the Defendants)

64. The allegations in Paragraph one through Paragraph sixty-three are realleged and incorporated herein.

65. The defamatory statements of Defendant Biden and chargeable to the remaining defendants constitute defamation *per quod* based on extrinsic facts proving the existence of actual damages to the Plaintiff's reputation and business.

## COUNT III

### (Libel – All the Defendants)

66. The allegations in Paragraph one through Paragraph sixty-five are realleged and incorporated herein.

67. The defamatory statements of Defendant Biden and chargeable to the remaining defendant were published as a televised and radio broadcast and therefore constitute libel.

## COUNT IV

### (Invasion of Privacy-False Light – All the Defendants)

68. The allegations in Paragraph one through Paragraph sixty-seven are realleged and incorporated herein.

69. The New Hampshire Supreme Court has "not yet addressed whether the tort of invasion of privacy — false light is recognized in New Hampshire." *Thomas v. Tel. Publ'g Co.*, 151 N.H. 435, 440 (2004) (citing *Hamberger v. Eastman*, 106 N.H. 107 (1964)). The Court's choice not to do so at present was recently confirmed in *Hynes v. New Hampshire*,

*Democratic Party,* No. 2021-0551 (N.H. June 1, 2023), because the parties to that appeal

did not present research and argument as to the issue.

70.    Since 2002, however, federal courts with jurisdiction over New Hampshire have

anticipated that the New Hampshire Supreme Court would recognize this tort because it is

recognized by Section 652E of the Restatement (Second) of Torts (1977) and the New

Hampshire Supreme Court looks to the Restatement in developing the common law of New

Hampshire. *See, e.g., Howard v. Antilla,* 294 F.3d 244 (1st Cir. 2002) (applying Section

652E to false-light claim in a diversity case from New Hampshire).

71.    The Restatement describes the tort of "Publicity Placing a Person in False Light" in the

following way:

> One who gives publicity to a matter concerning another that places the other
> before the public in a false light is subject to liability to the other for invasion of
> his privacy, if,
>
> (a) the false light in which the other was placed would be highly offensive to a
> reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of
> the publicized matter and the false light in which the other would be placed.

*Restatement (Second) of Torts § 652E.*

72.    As noted in *Hamberger, supra,* a false light claim "requires falsity or fiction." 106 N.H. at

111 (citing William L. Prosser, *Torts* § 112, at 842-43 (3d ed. 1964); *see also Restatement*

*(Second) of Torts* § 652A cmt. a ("it is essential to the rule stated in this Section that the

matter published concerning the Plaintiff is not true").

73.    The false statement does not, however, need to be defamatory to be actionable, only

offensive. *See* Dan B. Dobbs, *The Law of Torts* § 428, at 1208 (2001) ("the objectionable

false light is not necessarily a defamatory one, only false and offensive one).

14

74.   The statements made by Defendant Biden, which are chargeable to the remaining defendants, were false.

75.   The statements made by Defendant Biden, which are chargeable to the remaining defendants, were highly offensive to a reasonable person.

76.   As a result of Defendant Biden's false light statements, the Plaintiff has suffered damages within the jurisdictional limits of the Court.

77.   The Defendants, Biden for President, Biden Victory Fund, Biden Action Fund, and Biden Fight Fund, jointly and separately encouraged, relied on, promoted and/or realized substantial sums of money from statements of Defendant Biden, including the placing of the Plaintiff before the public in a false light all with the purpose and/or predictable and realized intent of receiving contributions to the election of Defendant Biden, which purpose was released by each of these organizational defendants.

<u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Rudolph Giuliani, respectfully requests that the Court:

A.   Enter judgment against the Defendants on all counts contained in this Complaint;

B.   Enter a judgment against Defendant Biden representing all of the following damages;

1.   the Plaintiff's actual losses,

2.   the Plaintiff's presumed losses, (and)

3.   punitive damages to punish and deter the egregious defamations by Defendant Biden;

C.   Order Defendant Biden to publicly acknowledge the falsehood of his defamatory statements;

15

D.     Order Defendant Biden to publicly acknowledge the falsehood of his offensive

statements;

E.     Order the remaining organizational Defendants to disgorge and pay to the

Plaintiff their illicit gains resulting from Defendant Biden's defamatory and offensive

statements and enter judgment against each such Defendant for such amounts;

F.     Enter judgment against the remaining organizational Defendants to pay those

damages as outlined in Request B, above; (and)

G.     Grant such other and further relief as justice and equity require.

> Respectfully submitted,
> Rudolph Giuliani,
>
> By and through his attorney,

Date: October 12, 2023

> /s/ William L. O'Brien
> William L. O'Brien, Esq.
> 1 Elm Street, Suite 201
> Nashua, NH 03060
> NH Bar ID no. 16867
> Tel. (603) 620-8710
> WilliamLOBrien@gmail.com

16