# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Rudolph Giuliani,<br><br>                    Plaintiff,<br><br>          v.<br><br>Joseph Robinette Biden, Jr., individually and as a private citizen; Biden for President, a presidential principal campaign committee; Biden Victory Fund, a nonqualified joint fundraising committee and joint fundraising representative; Biden Action Fund, a nonqualified joint fundraising committee and joint fundraising representative; Biden Baldwin Victory Fund, a nonqualified joint fundraising committee and joint fundraising representatives;<br><br>                    Defendants. | Civil Action No. 1:23-cv-00543-PB-AJ |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

III.  ARGUMENT ...................................................................................................... 3

    A.    Threshold procedural issues warrant dismissal................................................ 3

        1.    The exercise of jurisdiction would violate New Hampshire's long-arm statute and the Due Process Clause.......................................................... 3

        2.    Certain Entity Defendants must be dismissed because service was improper.... 10

    B.    Even assuming it is procedurally proper, the Complaint fails as a matter of law........... 11

        1.    As to both statements, Plaintiff fails to adequately allege the elements of defamation.............................................................................. 11

            a.    Any defamation claim should be dismissed for failure to plead actual malice........................................................................... 12

            b.    The Complaint fails to state a claim for relief because neither statement is a statement of fact. ............................................ 15

            c.    The Complaint fails to state a claim for relief because neither statement is susceptible of defamatory meaning. ................... 17

            d.    Neither statement is defamatory per se, and the Complaint otherwise fails to allege damages. .......................................... 19

        2.    Giuliani does not adequately allege a false light invasion of privacy claim.......21

        3.    Giuliani fails to state *any* claims against the Entity Defendants........................22

IV.   CONCLUSION.................................................................................................24

## I.    INTRODUCTION

This case is about two statements then-candidate Joseph Biden made during a presidential debate in Nashville, Tennessee in 2020 related to Rudolph Giuliani. Based on these statements, Giuliani has sued Biden, along with various additional entities (the "Entity Defendants"), stating claims for defamation and false light.[1]

Giuliani's claims suffer from at least two, fatal procedural defects. Most obviously, Giuliani filed this lawsuit in New Hampshire. New Hampshire, however, is nearly entirely disconnected from the tortious conduct alleged in this case—beyond being one of the fifty states in which the debate was broadcast. As a result, exercising personal jurisdiction would violate due process. Beyond this, dismissal of at least certain Defendants is required because Giuliani failed to follow the requirements of New Hampshire's service statute.

Even putting those procedural issues aside, the substantive issues with the Complaint are numerous and insurmountable. Perhaps most glaringly, the Complaint is utterly devoid of well-pled factual allegations that either statement was made with actual malice, "that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) (quoting N.*Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Moreover, the statements are ones of opinion that the First Amendment immunizes from tort liability; in fact, neither of the two statements at issue are capable of a defamatory meaning—an obvious prerequisite to a claim of defamation. Finally, but not least, Giuliani has not adequately alleged damages, as he must.

The Complaint's failure on these substantive points is particularly striking given that these statements occurred during a nationally televised presidential debate between the two major-party

---

[1] The undersigned counsel represents all Defendants, except for the Biden Fight Fund. The Biden Fight Fund no longer exists.

candidates. It is imperative that elected officials, and candidates, be "allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 395 (1962); *see also, e.g.*, *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (noting that the First Amendment contemplates an "atmosphere of free discussion . . . in the context of political campaigns").

For all these independent reasons, the Court should dismiss the Complaint.

## II.   BACKGROUND

On October 22, 2020, then-presidential candidate Joseph Biden and former President Donald Trump participated in a nationally televised debate in Nashville, Tennessee. First Amended Complaint ("FAC" or "Complaint") ¶ 27, *id.* n.5. This debate raised issues of national importance, including multiple discussions of Russian attempts to interfere in the election. The Complaint alleges that two statements made during that debate gave rise to the claims in this case.

*First*, Biden said that Giuliani "is being used as a Russian pawn he (sic) is being fed information that is Russian that (sic) is not true." FAC ¶ 30.

*Second*, Biden said: "[T]here are 50 former national intelligence folks who said that what this, he's accusing me of is a Russian plan[t]. They have said that this has all the characteristics — four– five former heads of the CIA, both parties, say what he's saying is a bunch of garbage. Nobody believes it except him and his good friend Rudy Giuliani." FAC ¶ 32.

Giuliani alleges that both statements constitute defamation[2] or false light invasion of privacy. FAC ¶ 59–77. Giuliani filed his first complaint in New Hampshire state court, which he amended on October 12. *See* Doc. 1-1. Defendants removed this action to this Court on December 18, 2023. Doc. 1.

---

[2]    Specifically, the Complaint alleges in Claims I–III: (1) defamation per se, (2) defamation per quod, and (3) libel. This Motion addresses all these claims in addressing Giuliani's claims for defamation. Notably, though, libel is a type of defamatory statement expressed in a fixed medium, esp. writing but also a picture, sign, or electronic broadcast." *Libel*, BLACK'S LAW DICTIONARY (11th ed. 2019). Though, none of the claimed defamatory statements appear to be written.

### III.     ARGUMENT

#### A.     Threshold procedural issues warrant dismissal.

##### 1.     The exercise of jurisdiction would violate New Hampshire's long-arm statute and the Due Process Clause.

Giuliani does not, and cannot, allege facts that would confer jurisdiction over any Defendant under either New Hampshire's long-arm statute or the requirements of the Due Process Clause. All Defendants should therefore be dismissed.

For the Court to exercise personal jurisdiction over the Defendants in this case, it must have both the statutory and constitutional authority to do so. *See generally McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). This requires evaluating, first, whether the state's long-arm statute is satisfied and, if it is, whether an assertion of jurisdiction would be consistent with the Due Process Clause. *Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023). At the pleading stage, a plaintiff must allege a prima facie record that supports the exercise of jurisdiction. *Id.* at 208.

New Hampshire's long-arm statute, *see* RSA 510:4, reaches to the full extent the Constitution allows. *Vapotherm, Inc.v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022); *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 287 (1st Cir. 1999). The question then is "whether the exercise of personal jurisdiction comports with federal constitutional standards." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995). It does not. The Complaint fails to establish either form of personal jurisdiction—general or specific.

1.     *General jurisdiction.* The Court does not have general jurisdiction over any of the Defendants. A court with general jurisdiction over a defendant may "hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General

jurisdiction requires that a Defendants' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). Nothing in Giuliani's complaint comes anywhere near meeting that standard. Rather, the only allegation connecting the Defendants and New Hampshire relates to the fact that Biden made his allegedly defamatory remarks "in at least one media outlet in New Hampshire." FAC ¶ 23(a). Nothing about this single contact is "continuous" or "systematic." *Daimler*, 571 U.S. at 127. The Court thus lacks general personal jurisdiction over the Defendants.

    2.    *Specific jurisdiction.* Giuliani's allegations also fail to establish specific personal jurisdiction over any of the Defendants. Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

    In light of these requirements, a "plaintiff[] seeking to establish that a court has specific personal jurisdiction over a defendant must" make the following three showings. *Scottsdale Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018). "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 17 (1st Cir. 2019) (quoting *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)). "Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's

- 4 -

laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id.* "Third, the exercise of jurisdiction must . . . be reasonable." *Id.* "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20. Giuliani cannot meet this standard for any Defendant.

<u>Purposeful availment.</u> Starting with the second showing first, Giuliani has not alleged any contacts with New Hampshire that could remotely be construed as "purposeful availment of the privilege of conducting activities in" the state. *PREP Tours, Inc.*, 913 F.3d at 17 (citation omitted). This alone "dooms" Giuliani's efforts to establish personal jurisdiction over the Defendants. *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20.

The "focus" in evaluating this factor is "whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" *Sawtelle*, 70 F.3d at 1391 (quoting *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)); *see also United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001) (the inquiry "focuses on the defendant's intentionality."). "The proper question" is "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

In evaluating purposeful availment in the context of defamation cases, courts in this Circuit have examined whether the "allegedly tortious, actions were expressly aimed at" the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see, e.g.*, *Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir. 1989) (citing *Calder* in evaluating purposeful availment in a defamation case); *see also Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC*, 615 F. Supp. 3d 39, 45 (D.N.H. 2022) (same). In doing so, courts consider whether the forum is the "focal point" of the defamatory statement and of the harm suffered. *Calder*, 465 U.S. at 789. That was not the case here.

As to the Entity Defendants, there are absolutely no allegations that they even engaged in making or publishing defamatory statements, let alone any focused activity in New Hampshire. The allegation is only that they "encouraged," or "relied on," or "promoted," the statements after the fact (whatever that means), without elaboration or any further detail, much less reference to New Hampshire. *See* FAC ¶ 24. Accordingly, this Court lacks personal jurisdiction over them. *See Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 148 (1st Cir. 2021) (requiring personal jurisdiction "for each claim and each defendant").

As to Defendant Biden, there are no allegations or evidence, plausible, inferential, or otherwise, to even suggest that New Hampshire was the "focal point" of the statements and of the harm allegedly suffered. *Calder*, 465 U.S. at 789. The Complaint alleges that the defamatory statements were made at a nationwide presidential debate, *see* FAC ¶¶ 27, 30, 32, which Giuliani does not allege occurred in New Hampshire, *see id.*, and which did not, *see id.* at ¶ n.5.

Additionally, neither Giuliani nor any of the Defendants are residents of New Hampshire, *see id.* ¶¶ 1–20, and Giuliani nowhere alleges that he suffered any injuries particular to New Hampshire. There are no allegations that the statements were based on activities in New Hampshire, or that the harm has been acute there. *See Walden*, 571 U.S. at 287 (acknowledging personal jurisdiction sufficient in California where defendants "relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in" California (quoting *Calder*, 465 U.S. at 788–89)).[3]

---

[3]     With no explanation, the Complaint states that personal jurisdiction is appropriate based on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). FAC ¶ 21. In *Keeton*, the Supreme Court held that personal jurisdiction was appropriate where a magazine conducted "regular monthly sales of thousands of magazines." 465 U.S. at 774. It makes sense that regular circulation

In sum, the statements here challenged were not "expressly aimed at," nor "tethered to" New Hampshire "in any meaningful way." *Calder*, 465 U.S. at 789; *Walden*, 571 U.S. at 290. New Hampshire's only connection to this case is being one of fifty states in which a nationally broadcast presidential debate aired. That is far from enough and, thus, Giuliani's Complaint falls far short of establishing specific jurisdiction. *Cf., e.g.*, *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) (explaining that the fact that a website "is visible in a forum . . . is not enough, by itself, to subject a defendant to personal jurisdiction in that forum").

Relatedness. The next factor is whether the claims "arise out of or relate to the defendants' forum-state activities." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ---, 141 S. Ct. 1017, 1026 (2021). An "'essential foundation' of specific jurisdiction" is that "there is a strong 'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). That foundation is missing here, too, at least as to some Defendants.

Where, as here, the alleged tort is defamation, courts look to the elements of that cause of action to determine whether the "injury" relates to "the defendants' forum-state activities." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20–21. For injury to have occurred in a defamation case, there must have been "an unprivileged publication to a third party," "(that is, a party who is not the subject of the defamatory material) . . . ." *Id.* at 21 (quoting RESTATEMENT (SECOND) OF TORTS § 558 (1977)); *see, e.g.*, *Lin v. TipRanks, Ltd.*, 19 F.4th 28, 35 (1st Cir. 2021) (plaintiff failed to satisfy the relatedness prong where there was no evidence that any individuals in the

---

of thousands of magazines to the forum targeted the forum. *See Walden*, 571 U.S. at 285 (describing *Keeton* as involving "physical entry into the state"). That is not the case here. These statements were made on a nationally televised debate. There is no allegation here that any of the Defendants, themselves, broadcast the statements in New Hampshire, or otherwise expressly aimed them there. *See* FAC ¶ 23.

forum had accessed or read allegedly defamatory statements made by defendant); *see also Howard v. Antilla*, 294 F.3d 244, 248 (1st Cir. 2002) (noting that false light requires giving publicity).

As to the Entity Defendants, again, there are no allegations that these Defendants published or otherwise gave publicity to any statement in New Hampshire. Accordingly, there is certainly no "strong 'relationship among the[se] [D]efendants, the forum, and the litigation.'" *Ford Motor Co.*, 141 S. Ct. at 1028 (quoting *Helicopteros Nacionales de Colombia*, *S.A.*, 466 U.S. at 414). And for this reason alone, due process prohibits this court from exercising personal jurisdiction over these Defendants.

<u>Reasonableness.</u> But even if the other two prerequisites were satisfied, the exercise of jurisdiction would be unreasonable and thus unconstitutional. "To assess reasonableness," courts consider the following factors: (1) the defendants' "burden of appearing" in the forum, (2) the forum's "interest in adjudicating the dispute," (3) the Plaintiff's "interest in obtaining convenient and effective relief," (4) "the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 166 (1st Cir. 2022).

These factors do not counsel in favor of the exercise of jurisdiction. New Hampshire has little "interest in adjudicating this dispute." *Id.* None of the parties are New Hampshire residents. Indeed, the Complaint has no allegations beyond conclusory allegations that indicate any acute harm occurred there (and almost no allegations at all regarding the Entity Defendants). *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994) (noting that the forum's "interest in the litigation . . . is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum"). Having only received the same nationally

- 8 -

televised presidential debate also broadcast in fifty other states, New Hampshire has no particular interest in this litigation.

Further, the burden of the Defendants appearing in New Hampshire weighs against the exercise of jurisdiction. *Id.* at 210. While the exercise of jurisdiction would not require the Defendants to appear cross-country, or in a different country, *see, e.g.*, *id.*, the burden of appearing is still significant. The Entity Defendants do not have a physical presence in New Hampshire, Biden does not live there, and there is no evidence to suggest any witnesses live in New Hampshire. Given the lack of any specific connection between the forum and the alleged torts, the burden to appear is unnecessary, and thus significant. *See id.*

Next, New Hampshire is certainly not "more convenient" for Giuliani. *Id.* at 211. Giuliani does not live in New Hampshire, and nothing in the record suggests that there is any relevant evidence or witnesses in New Hampshire. *See id.* (evaluating location of the evidence).

The final policy considerations counsel against the exercise of jurisdiction, too. *Id.* To be sure, New Hampshire "has an interest in protecting its citizens" from tortious behavior. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996). But, again, Giuliani is not a resident of New Hampshire, no part of the statements at issue are alleged to relate to New Hampshire, and the allegations of harm are particularly attenuated. And so, the rights of the Defendants, as well as those of other forums with specific connections to the allegedly tortious statements, "might be compromised" by the exercise of jurisdiction. *Id.* On balance, these factors disfavor this forum.

In the end, asserting personal jurisdiction over any of the Defendants would violate the Due Process Clause. Defendants request that this Court dismiss this case for lack of personal jurisdiction.

**2.      Certain Entity Defendants must be dismissed because service was improper.**

Certain of the Entity Defendants must be dismissed based on failure of service of process. Fed. R. Civ. P. 12(b)(5). This case arose in New Hampshire state court. Service of process was effectuated or attempted prior to removal. *See* Doc. 1 (discussing attempts at service prior to removal). Given this, the New Hampshire rules of service apply. *See* § 1082 *Service in Removed Actions*, 4A Fed. Prac. & Proc. Civ. § 1082 (4th ed.) ("In determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made.").

"Proper service of process is a necessary prerequisite to obtaining jurisdiction over an out-of-state defendant.'" *Lunt v. Gaylor*, 150 N.H. 96, 97, 834 A.2d 367, 368 (2003) (quoting *South Down Recreation Assoc. v. Moran,* 141 N.H. 484, 486, 686 A.2d 314 (1996)). "Proper service is 'separate from the due process requirement that the defendant have minimum contacts with the jurisdiction.'" *Id.* And "the manner of service of process prescribed by the legislature . . . must be followed." *S. Down Recreation Ass'n v. Moran*, 141 N.H. 484, 489, 686 A.2d 314, 317 (1996).

Here, Giuliani did not provide two of the Entity Defendants—Biden for President and the Biden Baldwin Victory Fund—notice of this lawsuit at their "last known abode or place of business in the state or country in which the defendant resides."[4] RSA § 510:4.II. Copies of the Complaint and related documents were sent to 430 South Capitol Street SE, Washington DC 20003. Doc. 1-2 at 22, 25. Neither of the entities conducted their business at that location at the time of service.

Because service of process was improper, the claims against Biden for President and the Biden Baldwin Victory Fund must be dismissed.

---

[4] Service would have also been improper as to the Biden Fight Fund because it is no longer in existence. *See* January 28, 2021 termination report letter from Federal Election Commission, *available at* https://docquery.fec.gov/pdf/669/202101280300102669/202101280300102669.pdf.

**B.      Even assuming it is procedurally proper, the Complaint fails as a matter of law.**

Even beyond these procedural defects, the Complaint should also be dismissed in its entirety for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In doing so, the court will "accept as true all of the factual allegations contained in [the] complaint." *Id.* But the court need not accept "legal conclusions." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (citation omitted). "Similarly, a court does not accept as true allegations that 'while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.'" *Id.* (quoting *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). As explained below, the Complaint does not state any claim.

**1.      As to both statements, Plaintiff fails to adequately allege the elements of defamation.**

To state a claim for defamation, a plaintiff must allege that a defendant (1) "publish[ed]" (2) "a false" (3) "and defamatory" (4) "statement of fact" (5) "about the plaintiff to a third party" with (6) the requisite mental state. *Boyle v. Dwyer*, 172 N.H. 548, 553, 216 A.3d 89, 94 (2019); *see also Scottsdale Cap. Advisors Corp.*, 887 F.3d at 21 (same). Beyond that, a defamation claim requires (6) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 21 (quoting RESTATEMENT (SECOND) OF TORTS § 558)).[5]

---

[5] Because, with respect to the law in this motion, there is no conflict between New Hampshire law, and the law of New York—the other jurisdiction's law that could potentially govern this case— Defendants assume, but do not concede that New Hampshire law applies. *See Lambert v. Kysar*,

The Complaint's most obvious problem is that it fails to plausibly allege the requisite mental state—actual malice. Beyond that, the Complaint must be dismissed because it fails to adequately allege that there were (1) statements of fact, (2) capable of defamatory meaning, and (3) that the requisite damages occurred.

> **a.   Any defamation claim should be dismissed for failure to plead actual malice.**

"[B]ecause political speech is the life-breath of democracy," *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 52 (1st Cir. 2012), public figures who seek to recover for defamatory statements must show that the statements were made with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not,'" *McKee*, 874 F.3d at 61 (quoting *N.Y. Times Co.*, 376 U.S. at 279–80). "[F]or recklessness the evidence must permit the conclusion that [the defendant] 'in fact entertained serious doubts as to the truth of his publication.'" *Vascular Sols., Inc. v. Marine Polymer Techs., Inc.*, 590 F.3d 56, 60 (1st Cir. 2009) (per curiam) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Giuliani is a public figure by reason of his notoriety, including due to his time as mayor of New York City. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *see also id.* ("[T]hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . . ."); *see also* FAC ¶ 55 (alleging Giuliani is "America's Mayor"). And so, he must plead and prove actual malice.

At the motion to dismiss stage, Courts examine whether the plaintiff "'la[id] out enough facts from which malice might reasonably be inferred.'" *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (quoting *Schatz*, 669 F.3d at 58). In doing so, courts must "isolate and ignore

---

983 F.2d 1110, 1114 (1st Cir. 1993) (noting that choice-of-law analysis is the same where "the outcome is the same under the substantive law of either jurisdiction").

statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz*, 669 F.3d at 55. After that, the well-pleaded facts must "'nudge[]'" Giuliani's "actual malice claim 'across the line from conceivable to plausible.'" *Id.* at 58 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations in original). Giuliani's allegations fall far short of meeting this standard.

The Complaint contains not one well-pled fact from which "actual malice might be inferred," *Schatz*, 669 F.3d at 58, related to the statement that Giuliani "is being used as a Russian pawn." FAC ¶ 30. Indeed, there are only two allegations in the entire Complaint that even claim that this statement was made either "with knowledge that it was false or with reckless disregard of whether it was false or not.'" *McKee*, 874 F.3d at 61 (quoting *N.Y. Times Co.*, 376 U.S. at 279–80). Specifically, the Complaint makes the conclusory allegations that "Defendant Biden made these defamations"—presumably referring to both alleged defamatory statements—"with actual malice or knowledge by Defendant Biden that they were untrue" and "with a reckless disregard of the truth . . . ." FAC ¶¶ 41–42. "But these are merely legal conclusions, which must be backed by well-pled facts." *Schatz*, 669 F.3d at 56. Here, they are not. The Complaint can be carefully examined from start to finish, but no additional factual allegations exist beyond these paragraphs. Not one. For this reason alone, the Complaint does not plausibly allege that then-candidate Biden acted with actual malice in making this statement.[6]

Giuliani also failed to adequately allege actual malice with respect to the statement that: "[T]here are 50 former national intelligence folks who said that what this, he's accusing me of is

---

[6]   While unclear, at points the Complaint details what this statement "implied." *See* FAC ¶ 58(a)–(b). This does not appear to be a claim for implied defamation, for the reasons set forth below. *See infra* n. 7. But, if it were, the Complaint does not contain any allegation that either states or implies that "the defendant[] intended or knew of the implications that the plaintiff is attempting to draw . . . ," as he must to succeed on such a claim. *Howard*, 294 F.3d at 252 (quoting *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988)).

a Russian plan[t]. They have said that this has all the characteristics — four– five former heads of the CIA, both parties, say what he's saying is a bunch of garbage. Nobody believes it except him and his good friend Rudy Giuliani." FAC ¶ 32. Put differently, this was a statement that "nobody believe[d]" a falsehood except "Rudy Giuliani." *See id.* As to this statement, the Complaint contains the same conclusory allegations, reciting, as if an incantation, the words of the legal standard. *See* FAC ¶¶ 41–42. But this is insufficient as a matter of law. *See Schatz*, 669 F.3d at 56.

The complaint does contain one *additional* paragraph with respect to this statement with allegations related to actual malice. *See* FAC ¶ 34. But it, too, is insufficient as a matter of law.

Specifically, the Complaint alleges that "Biden knew that" the "statement about the laptop" and that "Plaintiff lied about the content of the laptop" were "untrue" because "his then senior campaign advisor Antony Blinken, just the prior week, played the crucial role in the inception of the false letter concerning the laptop signed by 51 national intelligence officials." *Id.* But this does little more than to confuse the issues.

To start, the claimed defamatory statement is that "nobody believe[d]" a falsehood (presumably alleged to be contained on the laptop) except "Rudy Giuliani." FAC ¶ 32. It is not that "Plaintiff lied about the content of the laptop." *See* FAC ¶ 34. Even if it were, the allegation that one of Biden's advisors was involved, in some way, in investigating the veracity of the information, has no bearing whatsoever on Biden's mental state and thus does not push Giuliani's "actual-malice claim 'across the line from conceivable to plausible.'" *Schatz*, 669 F.3d at 58 (quoting *Twombly*, 550 U.S. at 570).

In sum, the Complaint makes no more than conclusory and formulaic allegations that Biden knew either statement was false or doubted its veracity. This is insufficient as a matter of law to plead actual malice; the defamation claims must be dismissed for this reason alone. Again, these

- 14 -

statements were made during a presidential debate between two major-party candidates. "[C]riticizing public officials and hopefuls for public office," along with other related public figures, "is a core freedom protected by the First Amendment and probably presents 'the strongest case' for applying 'the *New York Times* rule.'" *Schatz*, 669 F.3d at 52 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989)). "And absent actual malice"—let alone a well-pled allegation of actual malice—"more speech, not damages, is the right strike-back against" what Giuliani may believe is "superheated or false rhetoric," not this lawsuit. *Id.*

### b. The Complaint fails to state a claim for relief because neither statement is a statement of fact.

The Complaint also fails to state a claim for a second, entirely independent reason: both statements are statements of an opinion. Consistent with the First Amendment of the U.S. Constitution, and New Hampshire law, statements that "cannot 'reasonably [be] interpreted as stating actual facts' about an individual" cannot be grounds for a defamation suit. *Milkovich* , 497 U.S. at 20 (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *see also Boyle*, 172 N.H. at 553, 216 A.3d at 94 (discussing requirement that defamatory statement be factual under New Hampshire law). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Milkovich*, 497 U.S. at 20 (citation omitted). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Cheng v. Neumann*, 51 F.4th 438, 444 (1st Cir. 2022) (quoting *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000)) (alteration in original) (quotation marks omitted); *see also id.* at 446 (noting that "rhetorical hyperbole" is "common in much political discourse" (quoting *Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 65 (1st Cir. 2015))).

- 15 -

Because the statements are not "sufficiently factual to be susceptible of being proved true or false," *Milkovich*, 497 U.S. at 21, and are instead expressions of subjective opinion, they cannot be defamatory.

To start, the statement, made during a presidential debate, that Giuliani "is being used as a Russian pawn he (sic) is being fed information that is Russian that (sic) is not true," FAC ¶ 30, cannot give rise to liability. It is not "sufficiently factual to be susceptible of being proved true or false," *Milkovich*, 497 U.S. at 21. This is because the reference to Giuliani as "being used as a Russian pawn" is a subjective statement of "imaginative expression" frequent in "discourse of our Nation." *Id.* at 20. Among other things, there is no clear definition of what it means to be "used as a Russian pawn." FAC ¶ 30. And so there could be no objective criteria to determine the accuracy of this statement, which was a subjective description. *See, e.g.*, *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 n.7 (1st Cir. 1992) ("Even the less figurative assertion that appellants are 'blatantly misleading the public,' . . . is subjective and imprecise, and therefore not capable of verification or refutation by means of objective proof.").

The second statement fares even worse. This statement was that "[n]obody believes [false information planted by Russia] except him [i.e., Donald Trump] and his good friend Rudy Giuliani." FAC ¶ 32. This is another example of imaginative expression frequent in "discourse of our Nation." *Milkovich*, 497 U.S. at 20. This statement was an exaggeration; of course, Biden could not have known what *every* person thought about this false information. And there could be no objective criteria to determine the accuracy of this statement. Who would it be necessary to speak with? Indeed, "[t]he First Amendment's shielding of figurative language reflects the reality that exaggeration and non-literal commentary have become an integral part of social discourse."

- 16 -

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997). As a result, this statement is not actionable, either.

If Presidential candidates could be subject to liability for defamation based on such subjective statements, made during Presidential debates, it would significantly undermine the First Amendment protections of candidates for public office. *Cf. Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("To permit the infliction of . . . liability upon the petitioners for publishing these two news articles [containing non-factual statements] would subvert the most fundamental meaning of a free press, protected by the First and Fourteenth Amendments.").

### c.   The Complaint fails to state a claim for relief because neither statement is susceptible of defamatory meaning.

Even if Plaintiff had adequately pled the elements of "actual malice," and even if the alleged statements were not statements of opinion, the Complaint still fails for a third, independent reason: Neither of the statements are susceptible of a defamatory meaning. *Boyle*, 172 N.H. at 554–955, 216 A.3d at 94–95 (requiring statements to be defamatory). "Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community." *Id.* at 554, 216 A.3d at 95 (quoting *Thomas v. Tel. Publ'g Co.*, 155 N.H. 314, 338, 929 A.2d 993, 1015 (2007), *as modified*, (Aug. 29, 2007)) (quotation marks omitted) (alteration in original); *see also Boyle*, 172 N.H. at 557, 216 A.3d at 97 ("Whether a communication is capable of bearing a defamatory meaning is an issue of law for the Court." (citation omitted)); *see also Duchesnaye v. Munro Enters., Inc.*, 125 N.H. 244, 252–53, 480 A.2d 123, 127 (1984) (noting that at the motion to dismiss stage the task is to "determine whether the language in question could reasonably have been read to defame the plaintiff").

The first statement that Giuliani challenges—that he "is being used as a Russian pawn he (sic) is being fed information that is Russian that (sic) is not true," FAC ¶ 30—is not susceptible

of defamatory meaning. The allegation is not that Giuliani himself was deliberately tricking or misleading someone, which could be defamatory. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990) (calling someone a liar, if untrue, can damage reputation). The allegation is that Giuliani was duped or tricked through the actions of another. A statement that Russians took advantage of Giuliani's desire to obtain information about then-candidate Biden by feeding him false information does not subject Giuliani to "contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community." *Boyl*e, 172 N.H. at 557, 216 A.3d at 97; *see, e.g.*, *Mead v. True Citizen, Inc.*, 203 Ga. App. 361, 362, 417 S.E.2d 16, 17 (1992) (noting that article that "clearly indicate[d], although erroneously, that appellant was the victim of a crime who took actions in her own defense, not the perpetrator of the crime" did not subject individual to "contempt" or "ridicule").[7]

The same is true with respect to the second statement: it, too, is not susceptible to a defamatory meaning. Again, in that statement, Biden said: "[T]here are 50 former national intelligence folks who said that what this, he's accusing me of is a Russian plan[t]. They have said that this has all the characteristics — four– five former heads of the CIA, both parties, say what he's saying is a bunch of garbage. Nobody believes it except him and his good friend Rudy

---

[7] Notably, the Complaint vaguely suggests (at FAC ¶ 58(a)–(b)) that this statement implies certain other things. The Complaint alleges that "[w]hen the Plaintiff was identified as a 'pawn,' it implied that he is easily manipulated, lacks agency, or is merely a tool used by others for larger objectives, thereby publicly undermining the perception of the Plaintiffs autonomy, decision-making capabilities, and significance" and that "he does not act of his own volition." *Id.* These allegations appear to be couched in terms of "harm" suffered because of the statements, and do not appear to state a claim for implied defamation. "Defamation by implication is a particular theory of defamation whereby a defendant may be held liable for making a statement that, while literally true, is presented in a way that conveys a false and defamatory implication." *Lewis v. Abramson*, No. 22-CV-126-PB, 2023 WL 3322009, at *7 (D.N.H. May 9, 2023). Giuliani, however, does not allege that the underlying statements were true; instead, he alleges that he "was never used as a Russian pawn." FAC ¶ 38. In any event, "an objectively reasonable [listener] could [not] draw the alleged false implication[s]" from the statements. *Nunes v. Lizza*, 12 F.4th 890, 896 (8th Cir. 2021). It is a significant jump from "being fed [false] information," FAC ¶ 30, to lacking agency, "decision-making capabilities," or an ability to "act of his own volition." FAC ¶ 58(a)–(b).

Giuliani." FAC ¶ 32. Distilled, this is a statement that "nobody believe[d]" a falsehood except "Rudy Giuliani," and President Trump. *See id.* Believing something to be true, which is not, does not subject Giuliani to "contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community." *Boyl*e, 172 N.H. at 557, 216 A.3d at 97.

Because neither statement is susceptible of defamatory meaning, Giuliani's defamation claims should be dismissed on this additional ground.

> **d.    Neither statement is defamatory per se, and the Complaint otherwise fails to allege damages.**

Finally, defamation requires "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 21 (quoting RESTATEMENT (SECOND) OF TORTS § 558). The Complaint fails to adequately plead this element.

Here, Giuliani claims that no "special harm" must be shown because the statements constitute "defamation per se." FAC Count I. As Giuliani seems to recognize, *see* FAC ¶ 62, under New Hampshire law, "no proof of specific damages is required '[w]hen . . .  the jury could find that the defamatory publication charged the plaintiff with a crime or with activities which would tend to injure him in his trade or business, commonly called libel per se.'" *MacDonald v. Jacobs*, 171 N.H. 668, 674, 201 A.3d 1253, 1259 (2019) (quoting *Chagnon v. Union Leader Corp.*, 103 N.H. 426, 441, 174 A.2d 825, 835 (1961)).

Neither statement here is defamatory per se. Neither statement—that Giuliani was given false information or that Giuliani believed it—"charged the plaintiff with a crime." *Id.* Nor does either statement "charge[] the plaintiff . . . with activities which would tend to injure him in his trade or business . . . ." *Id.* As alleged in the Complaint, Giuliani's current business is related to "charitable events and host[ing] a well-received podcast in New York City." FAC ¶ 56. Nowhere

does Giuliani's Complaint allege, or explain, how statements that Giuliani was fed or believed false information by Russians affects his charitable events or podcast. Indeed, in holding that certain statements constitute defamation per se, courts have frequently required a concrete connection between the statement and the plaintiff's professional interests. *See, e.g.*, *Martin v. Mooney*, 448 F. Supp. 3d 72, 84 (D.N.H. 2020) (finding defamation per se when an employer stated that an employee was terminated because of a "pattern of unprofessional conduct"); *Lassonde v. Stanton*, 156 N.H. 582, 586, 956 A.2d 332, 337 (2008) (finding defamation per se where the plaintiff stated that the defendants, homebuilders, were incompetent and built a "sickly" house). Accordingly, neither statement is defamatory per se.

Beyond this, Giuliani pleads what appears to be an alternative claim for "defamation per quod" "based on extrinsic facts proving the existence of actual damages to the Plaintiff's reputation and business." FAC Count II. Under such a theory, plaintiffs generally must "prove 'special harm' (also known as 'special damages') . . . ." *F.A.A. v. Cooper*, 566 U.S. 284, 295 (2012); *see also Scottsdale Cap. Advisors Corp.*, 887 F.3d at 21 (absent defamation per se, requiring "existence of special harm caused by the publication") (quoting Restatement (Second) of Torts § 558)). "'Special damages are limited to actual pecuniary loss, which must be specially pleaded and proved.'" *Cooper*, 566 U.S. at 295. And "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g).

Here, the allegations contain no specificity as to Giuliani's damages. The Complaint contains the conclusory allegations that Giuliani suffered "actual damages," FAC ¶ 65, and that he may be "denied positions that require credibility, trust, decision-making and independence," *id.* ¶ 58(b). But there is no "specific accounting of those damages or an explanation of how the

purported defamation caused them." *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009). The Complaint must be denied for this additional reason as well.

### 2.   Giuliani does not adequately allege a false light invasion of privacy claim.

The Complaint alleges a second claim for false light invasion of privacy. But that claim, too, must be dismissed for failure to state a claim. As Giuliani concedes, New Hampshire does not yet recognize the tort of false light invasion of privacy. *See* FAC ¶ 69 (citing *Hynes v. N.H. Democratic Party*, 175 N.H. 781, 792, 302 A.3d 47, 56 (2023)). "When considering a difficult state law question on which the highest court of the state has not spoken directly," federal courts may make their "own best guess" as to state law. *Ken's Foods, Inc. v. Steadfast Ins. Co.*, 36 F.4th 37, 41 (1st Cir. 2022); *but see Bleish v. Moriarty*, No. 11–cv–162, 2011 WL 6141271, at *2 (D.N.H. Dec. 9, 2011) ("In the absence of a duly recognized cause of action, the court has two options: certification or dismissal.") (citations omitted)).

New Hampshire would not recognize this new cause of action here. Given the nature of the statements, and the lack of evidence regarding state of mind—discussed further below—"the relief that the plaintiff requests would [not] be an appropriate way to recognize" any claim of false light. *Hynes*, 175 N.H. at 792, 302 A.3d at 56. But the Court does not have to reach the question of whether New Hampshire law would support a claim for false light because, even if it did, the Complaint, on its face, would not support its elements. *See Lewis v. Abramson*, No. 22-cv-126, 2023 WL 3322009, at *7 n. 8 (D.N.H. May 9, 2023) (noting the U.S. District Court for the District of New Hampshire's "consistent position that the New Hampshire Supreme Court would recognize a cause of action for false light invasion of privacy" but that the question was not settled).

In the past, this Court has assumed that New Hampshire would apply the elements of false light as identified in the Restatement. These are that a plaintiff must plead facts sufficient to

- 21 -

establish: (1) the "[d]efendant 'gives publicity to a matter concerning [the plaintiff] that places [the plaintiff] before the public in a false light,'" (2) "that false light 'would be highly offensive to a reasonable person'" and (3) that "the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Lewis*, 2023 WL 3322009, at *7 (quoting RESTATEMENT (SECOND) OF TORTS § 652E (1977)).

Any claim for false light must fail, at a minimum, because the complaint does not adequately plead either that "the defendant[s] []had knowledge of" falsity or "acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.* As explained above in discussing actual malice (at III.B.1(a)), the Complaint makes little more than conclusory, formulaic allegations that Biden knew any statement was false or acted in reckless disregard of its veracity.

Beyond that, neither statement "'would be highly offensive to a reasonable person.'" *Lewis*, 2023 WL 3322009, at *7 (quoting RESTATEMENT (SECOND) OF TORTS § 652E). Again, the statements boil down to that Giuliani was fed false information and believed false information. This is not "such a major misrepresentation of" Giuliani's "character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position . . . ." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.

For either of these reasons, the false light claim must be dismissed, too.

### 3.   Giuliani fails to state *any* claims against the Entity Defendants.

Finally, but perhaps most obviously, the Complaint fails to make any significant claims against the Entity Defendants. Giuliani brings all four claims against the Entity Defendants: defamation per se, defamation per quod, libel, and invasion of privacy. FAC ¶¶ 59–77. Giuliani's theory of liability, however, against the Entity Defendants is unclear. Giuliani's allegations against all the Entity Defendants boil down to the allegation that the Entity Defendants "encouraged, relied

- 22 -

on, and/or promoted statements" to raise money to elect Defendant Biden. *See id.* ¶ 20; *see also, e.g.,* ¶ 61.

There are no well-pled factual allegations supporting those conclusions. As to the Entity Defendants, Giuliani fails to allege any "specific statements" made by the Entity Defendants, let alone any that were false and defamatory statements of fact. *See, e.g., Automated Transactions, LLC v. Am. Bankers Ass'n*, 172 N.H. 528, 532, 216 A.3d 71, 77 (2019) (noting that to survive dismissal for defamation a plaintiff "must have alleged facts that would show that the Defendants failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff[ ] to a third party"). The only possible statements then are the ones already discussed, made by Defendant Biden, but Giuliani provides no allegations whatsoever of how the Entity Defendants "encouraged, relied on, and/or promoted" those statements. Furthermore, Giuliani fails to plead *any* factual allegations regarding actual malice regarding the Entity Defendants.[8] That is fatal to any defamation and false light claim against them. *See Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012) (affirming dismissal of complaint that only alleged conclusory allegations of fault and "no factual assertions that in any way lend plausibility to these conclusions").[9] These deficiencies warrant dismissal of the Entity Defendants.

---

[8] This is not surprising. By his own admission Giuliani has no knowledge of any actual statements by the Entity Defendants, so it is understandable that he can hardly plead that those unknown statements to unknown third parties were—or were not—made with actual malice.

[9] To the extent that Giuliani is attempting to plead some kind of imputed liability, attributed to the Entity Defendants based on the conduct of Biden, that too fails. The only legal grounds for relief against the Entity Defendants apparent from the face of the complaint are the defamation claims and the false light claim. Giuliani pleads no separate and independent cause of action against the Entity Defendants under *any* alternate theory of imputed liability. Nor do these allegations line up with, or implicate, any potentially relevant theory. *See, e.g., Lewis*, 2023 WL 3322009, at *5 (noting that a "civil conspiracy is 'a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means'"); *see also, e.g., Pierson v. Hubbard*, 147 N.H. 760, 767, 802 A.2d 1162, 1168 (2002) (discussing vicarious liability for defamation when acting within scope of employment).

- 23 -

## IV.     CONCLUSION

For the reasons set forth above, this Court lacks personal jurisdiction over all Defendants, and certain Defendants have not been properly served. Even on the merits, the Complaint fails to state a claim against any Defendant. Accordingly, Defendants respectfully submit that the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

Joseph Robinette Biden, Jr.
Biden for President,
Biden Victory Fund,
Biden Action Fund,
and
Biden Baldwin Victory Fund

By Their Attorneys:
Dated: January 25, 2024                                    SHAHEEN & GORDON, P.A.


By: /s/ William E. Christie
William E. Christie #11255
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
(603) 225-7262
wchristie@shaheengordon.com

and

David J. Burman DC #269779
Nicholas Marquiss DC #1780636
PERKINS COIE LLP
700 13th Street, NW Suite 600
Washington, D.C. 20005
dburman@perkinscoie.com
nmarquiss@perkinscoie.com

- 24 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF). I further certify that the foregoing has been conventionally served on Louis Diamond, Esquire, counsel for Plaintiff, by electronic mail as follows:

Louis Diamond, Esquire
Biker451lou@hotmail.com

<u>/s/ William E. Christie</u>
William E. Christie